IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUAN CARLOS EMDEN, MICHEL EMDEN, AND NICOLÁS EMDEN, §§§§§§§§§§§§§ | |
| *Plaintiffs*, | CIVIL ACTION NO. 4:21-CV-03348 |
| v. | |
| THE MUSEUM OF FINE ARTS, HOUSTON, | |
| *Defendant*. | |

**The Museum of Fine Arts, Houston's Reply in Support of Motion to Dismiss**

**TABLE OF CONTENTS**

I.   The Act of State Doctrine Bars Adjudication of Plaintiffs' Claims ...................................1

   A.   The Dutch Government's Decision to Restitute an Artwork Present in the Netherlands, and in Keeping with the Formal Restitution Process, is an Act of State that Cannot Be Challenged ..................................................................1

   B.   The Munsing Letter Did Not Obligate the Netherlands to Act ...............................4

   C.   Von Saher Makes Clear that the Dutch Government's Restitution to Moser Is an "Act of State" that Cannot Be Challenged ..........................................5

II.  Plaintiffs' Claims Are Time Barred ...............................................................................7

   A.   Plaintiffs' Interpretation of the Discovery Rule is Overstated ................................7

   B.   The HEAR Act Does Not Salvage Plaintiffs' Stale Claims ....................................9

   C.   Laches Bars the Plaintiffs' Claims ........................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bakalar v. Vavra*,
    819 F. Supp. 2d 293 (S.D.N.Y. 2011)..................................................................................10

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ................................................................................................3, 5

*de Archibold v. United States*,
    499 F.3d 1310 (Fed. Cir. 2007)................................................................................................4

*de Archibold v. United States*,
    57 Fed. Cl. 29 (Fed. Cl. 2003) ..................................................................................................4

*Gallier v. Woodbury Financial Services, Inc.*,
    171 F. Supp. 3d 552 (S.D. Tex. 2016) .....................................................................................8

*Hanoch Tel-Oren v. Libyan Arab Republic*,
    517 F. Supp. 542 (D.D.C. 1981) ..............................................................................................4

*Harris Cty. Texas v. MERSCORP Inc.*,
    791 F.3d 545 (5th Cir. 2015) ...................................................................................................7

*Kwan v. United States*,
    272 F.3d 1360 (Fed. Cir. 2001)................................................................................................4

*Maltina Corporation v. Cawy Bottling Company*,
    462 F.2d 1021 (5th Cir. 1972) .................................................................................................1

*Schilling v. Rogers*,
    363 U.S. 666 (1960)................................................................................................................7

*Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*,
    273 F.3d 644 (5th Cir. 2001) ...................................................................................................8

*United States v. Mann*,
    829 F.2d 849 (9th Cir. 1987) ...................................................................................................4

*Vaught v. Showa Denko K.K.*,
    107 F.3d 1137 (5th Cir. 1997) ............................................................................................8, 9

*Von Saher v. Norton Simon Museum of Art*,
    897 F.3d 1141 (9th Cir. 2018) ...................................................................................2, 5, 6, 7

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ................................................................................................2

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    754 F.3d 712 (9th Cir. 2014) .............................................................................................2, 6

*Zuckerman v. Metro. Museum of Art*,
    928 F3d 186 (2d Cir. 2019)................................................................................................10

**State Cases**

*Bell v. Showa Denko K.K.*,
    899 S.W.2d 749 (Tex. Ct. App. 1995) ..................................................................................9

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
    918 S.W.2d 453 (Tex. 1996)..................................................................................................7

*Hoover v. Gregory*,
    835 S.W.2d 668 (Tex. App. 1992)........................................................................................9

*Pearson v. Amer. Fid. & Cas. Co.*,
    321 S.W.2d 620  (Tex. Civ. App.-Amarillo 1959) .............................................................10

**Statutes**

Holocaust Expropriated Art Recovery Act of 2016, Pub. L. No. 114-308, 130 Stat.
    1524.......................................................................................................................................9

S. Rep. No. 114-394 (2016) (https://www.congress.gov/114/crpt/srpt394/CRPT-
    114srpt394.pdf)....................................................................................................................9

I.   **The Act of State Doctrine Bars Adjudication of Plaintiffs' Claims**

    A.   *The Dutch Government's Decision to Restitute an Artwork Present in the Netherlands, and in Keeping with the Formal Restitution Process, is an Act of State that Cannot Be Challenged*

Plaintiffs acknowledge the act of state doctrine applies to bar an action when "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign *performed within its own territory*." Emden Response ("Response") at 15 (quoting *Geophys. Serv., Inc. v. TGS-NOPEC Geophys. Co.,* 850 F.3d 785, 796 (5th Cir. 2017)). Plaintiffs contend this straightforward premise does not apply here, because certain wartime and post-wartime events took place outside of the Netherlands. But the fact that an artwork was discovered in Austria at the end of the war and was restituted to someone outside of the Netherlands is wholly irrelevant to the act of state doctrine, which focuses on a *sovereign's* acts, not on the borders the property may cross before or after that act.[1] What matters is "whether the conveyance . . . constituted an official act of [the] sovereign." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 754 F.3d 712, 726 (9th Cir. 2014).

After the war, the Dutch Government created a comprehensive restitution program that vested the Dutch government with the authority to return taken property to individual pre-war owners. MTD at 22-23 (referencing the impact of Royal Decrees E100 and E133). It was through this formal restitution program that the Dutch government determined that Harold Moser was the pre-war owner of the claimed artwork. Compl. ¶ 39. After receiving the Painting from

---

[1] Plaintiffs' reliance on *Maltina Corporation v. Cawy Bottling Company*, 462 F.2d 1021 (5th Cir. 1972) is misplaced. That case involved the application of the act of state doctrine to a Cuban law that confiscated or dissolved a corporation with property in both Cuba and the United States. The court recognized that the act of state barred it from examining Cuba's actions as they related to property *in* Cuba. *Id.* at 1024-25. It rejected application of the act of state to the attempted expropriations in the United States, however, based on "a long line of cases that 'our courts will not give "extra-territorial effect" to a confiscatory decree of a foreign state, even where directed against its own nationals.'" *Id.* at 1025 (internal citation omitted).

1

the U.S. government – and reviewing Moser's formal restitution claim with sworn affidavits – the Dutch government decided to restitute the Painting to Moser. *Id.* ¶¶ 2, 37, 39. Because the Dutch government's singular decision to restitute the Painting to Moser took place within Dutch territory, that "official act" is subject to the act of state doctrine.

The Museum agrees that the United States' and Allied forces' post-war foreign policy statements memorialized a general agreement to work together "to assist one another as may be required" with the goal of returning property to the rightful owner. Response at 16 (quoting the London Declaration); *see also* MTD at 20-22. And that is precisely what happened here – the U.S. government provided assistance to the Dutch government so that it could restitute the artwork. Moreover, under this policy of "external restitution," the U.S. restituted artwork to countries, not individuals. MTD at 21 (citing Art Objects in U.S. Zone; Plunder and Restitution at SR-139-42). And perhaps most importantly, "[o]nce the art was returned to the country of origin, the U.S. played no further role." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 962 (9th Cir. 2010). This means that, under U.S. policy, once the artwork was returned to the Dutch government, the U.S. government had no role or say in the Dutch government's individualized restitution process.[2]

Plaintiffs assert that the act of state doctrine is not implicated because they only "seek to

---

[2] This approach is echoed in the Solicitor General's amicus brief, submitted in *Von Saher, see* Dkt. 13-1, at 220-48, and summarized by the Ninth Circuit as follows:

> The brief conveyed that "World War II property claims may not be litigated in U.S. courts if the property was 'subject' or '*potentially subject*' to an adequate internal restitution process in its country of origin." The brief further explained that the paintings at issue in this appeal "have already been the subject of both external and internal restitution proceedings, including recent proceedings by the Netherlands." Those proceedings were "bona fide," according to the brief, and so "their finality must be respected."

*Von Saher v. Norton Simon Museum of Art,* 897 F.3d 1141, 1147-48 (9th Cir. 2018) (citations omitted).

2

validate the Allied forces' agreement with the Netherlands to return the property the Netherlands conditionally accepted." Response at 14. Aside from the fact that U.S. policy ended with the property's handover to the Netherlands, as noted above, the Plaintiffs' statement that they seek to validate the Agreement makes clear that they misunderstand the parameters of the purported "agreement."

The Allied forces returned property to the Dutch government and the Dutch government, by law, had the authority to restitute artworks to claimants. It was not "conditional," as Plaintiffs assert. The Dutch government had the authority and discretion to return the artwork to individuals, based on review of claims submitted through the formal restitution process, or keep as its own property any artwork that was not claimed. MTD at 22-23.

In their Response, Plaintiffs attach a document, dated April 15, 1946, that they describe as a "conditional agreement." Dkt. 23-1. This document accompanied the Painting, along with 139 other items, when delivered to the Dutch government for possible restitution. Plaintiffs contend this document obligated the Dutch government to return the Painting to the United States when, on May 12, 1949, Stefan Munsing, Chief of Monuments, Fine Arts and Archives Section, Restitution Branch, sent a letter to the Dutch government noting that new information suggested that the Painting had belonged to a different owner than was previously thought. Exh. 9 (the "Munsing Letter").[3] Plaintiffs are mistaken.

The document Plaintiffs attach is not an agreement, conditional or otherwise. Rather, as noted in the document's title, it is a "Receipt for Cultural Objects." Dkt. 23-1 (the "Receipt"). In addition, the Receipt is not an enforceable agreement because it was not executed by an

---

[3] The letter is discussed in ¶ 39 of the Complaint and central to Plaintiffs' claims; consideration is appropriate. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).

3

authorized representative of the United States.[4] The only U.S. signatory was a *witness*, not a party to any purported agreement. Moreover, while "agreements" and treaties between sovereign governments may be "contractual in nature," *de Archibold v. United States*, 499 F.3d 1310, 1314-15 (Fed. Cir. 2007), they are not express contracts. Thus, to the extent that there are obligations to be enforced, treaty principles, not contract principles, must be applied. *See de Archibold v. United States*, 57 Fed. Cl. 29, 33 (Fed. Cl. 2003).

Finally, the Receipt contains no provision describing a private right of action, and courts do not have the power to enforce one where none exists. *See, e.g, Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F. Supp. 542, 546 (D.D.C. 1981), *aff'd sub nom. Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984); *United States v. Mann*, 829 F.2d 849, 852 (9th Cir. 1987). Accordingly, the Receipt is neither an agreement nor a contract that Plaintiffs may seek to enforce, and it has no legal impact on (or relevance to) Dutch government's decision to restitute the Painting to Moser, the act of state that is controlling in this action.

### B.     *The Munsing Letter Did Not Obligate the Netherlands to Act*

As they cannot challenge the conveyance itself, Plaintiffs fault the Dutch government for failing to cancel or unwind the restitution when, *after* the restitution to Moser, the U.S. government sent the Munsing letter which *suggests* that the United States *may* have erred in its identification of the Painting, prior to its handover to the Dutch government for restitution. But

---

[4] Even if this Court construed the Receipt as an "agreement," and that the Netherlands' failure to return the Painting to the Allied forces was some sort of breach of that agreement, Plaintiffs lack standing to assert a claim of breach or to demand performance. Because the Munsing letter raises the possibility that only the Duke of Anhalt-Dessau was the owner of the Painting, neither Plaintiffs nor their predecessors could be intended third party beneficiaries to the purported agreement. Plaintiffs lack standing to enforce any purported obligations created by the Receipt. *See Kwan v. United States*, 272 F.3d 1360, 1363 (Fed. Cir. 2001) (recognizing "the appellants cite no authority, and we know of none, whereby an individual has been found entitled to judicial enforcement of a government-to-government agreement on a legal theory that they are third party beneficiaries of the agreement").

an inquiry letter cannot invalidate a foreign sovereign's state act. Nor does the Munsing letter purport to do any such thing. In fact, to the extent that it "obligates" – or more accurately "requests" – the Dutch government to act, it is to provide a response in light of the new information the letter provides. Exh. 9.

And the Dutch government *answered* this request, acknowledging the letter and providing a photograph of the certificate of ownership. Exh. 10 at 81.[5] That response letter, dated June 1, 1949, states:

> In reply to your letter of May 12th 1949, with enclosed photography, we may inform you, that the painting mentioned therein has been restituted to Mr. Hugo Mose[r] 120, Central Park, South New York, being the legal owner of the painting in question. Please find enclosed a photograph[] of the certification of ownership, which is in our possession. We trust that herewith to your satisfaction is proved, that Mr. Hugo L. Mose[r] is the real owner of the painting.

*Id.* The Dutch archival file, which included both the Munsing letter and this reply, contains no further communications from Munsing. Exh. 10.

The Receipt notes that the receiving government "undertakes to restore any object which has been delivered to it by mistake," Dkt. 23-1, but the lack of *any* response from the United States to the Dutch government's reply letter evidences that, with the certificate of ownership, the Allied forces no longer considered the Moser restitution to be a mistake. With the United States' query regarding a possible mistake addressed, nothing in the Receipt – even if read as an agreement – could prompt (much less require) the Netherlands to take any further action.

    **C.**    ***Von Saher* Makes Clear that the Dutch Government's Restitution to Moser Is an "Act of State" that Cannot Be Challenged**

In *Von Saher v. Norton Simon Museum of Art at Pasadena*, 897 F.3d 1141 (9th Cir. 2018), the Ninth Circuit recognized that where property is conveyed to a claimant as part of the

---

[5] Records from this file are referenced in the Complaint and central to Plaintiffs' claims. Compl. ¶¶ 2, 28, 35, 39. Consideration of the file is appropriate. *Collins*, 224 F.3d at 498-99.

Dutch government's formal restitution process, that conveyance is an act of state that cannot be challenged. *Id.* at 1149-51. Plaintiffs do not assert that *Von Saher* was wrongly decided, but contend that the non-dispositive factual distinctions between this action and *Von Saher* – including the fact that the act of state doctrine was found to apply following summary judgment – render *Von Saher* distinguishable. Plaintiffs misread *Von Saher*.

The *Von Saher* claimant asserted that the Dutch government "wrongfully delivered" the claimed property to George Stroganoff-Sherbatoff who in 1966, after filing a restitution claim, entered into an agreement with the Dutch government to buy back the painting which, Stroganoff asserted, had been part of his family's art collection decades before World War II. 754 F.3d at 726. The claimant asserted that the act of state doctrine did not apply to bar review of the Dutch government's return because the sale was outside the formal Dutch restitution process. *See id.* Reviewing the district court's order granting the motion to dismiss, the *Von Saher* court determined that it was not clear that the act of state doctrine applied, as the Dutch government's 1966 conveyance to Stroganoff might be merely a commercial sale, as the claimant alleged. *See id.* Following remand and a motion for summary judgment, the Ninth Circuit recognized that the conveyance was the "product of the Dutch government's sovereign internal restitution process" and was, therefore, a sovereign act subject to the act of state doctrine. 897 F.3d at 1149.

Here, there is no sale or unconventional return that requires further analysis – it is not disputed in the complaint that the Dutch government's conveyance of the Painting to Moser was the result of that government's formal restitution process. Like the *Von Saher* claimant, Plaintiffs assert that, based on *post-restitution* information, the Netherlands returned the Painting to the wrong person, but unlike in *Von Saher*, they do not assert at the motion to dismiss stage that the Dutch government's conveyance was outside the Dutch government's formal restitution

6

process. Because the Dutch government's conveyance of the Painting to Moser was part of that government's formal restitution process, that act – whether correct or not, in light of Plaintiffs' modern-day allegations – was an act of state that cannot be challenged.

In this way, the dispositive impact of the act of state doctrine – precluding a U.S. court from examining the Dutch government's formal restitution process and actions to determine whether the restitution was proper based on post-restitution information – is the same in both *Von Saher* and this case. Because "the relief sought" by Plaintiffs – a declaration of their ownership – "would necessitate [this Court's] 'declar[ing] invalid'" "official act[s] of" the Dutch government "performed within its own territory," the act of state doctrine bar's Plaintiffs' claims.[6] *Von Saher*, 897 F.3d at 1149 (quoting *W.S. Kirkpatrick Co., v. Environ. Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990)).

## II. Plaintiffs' Claims Are Time Barred

### A. *Plaintiffs' Interpretation of the Discovery Rule is Overstated*

Plaintiffs contend the discovery rule delayed accrual of their claims until 2021 when they received additional evidence supporting their claim to the Museum's Painting. This overstates the discovery rule, which is "a very limited exception to statutes of limitation." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). Even *if* the discovery rule applies, it delays accrual only "until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Wagner & Brown, Ltd.*, 58 S.W.3d at 734; *see*

---

[6] Once the Court dismisses Plaintiffs' causes of action, it should also dismiss the request for declaratory relief as moot. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("Declaratory Judgments Act is not an independent source of federal jurisdiction . . . the availability of such relief presupposes the existence of a judicially remediable right.") (internal citation omitted); *Harris Cty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015).

7

*also Tex. Soil Recycling, Inc. v. Intercargo Ins. Co.*, 273 F.3d 644, 649 (5th Cir. 2001); *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1141-42 (5th Cir. 1997)).

The 2006 and 2007 Demand Letters, Dkt. 13-1 at 9-10 and 139-54, confirm that Plaintiffs had knowledge of facts giving rise to their claims. In 2006, Plaintiffs presented facts and documents regarding the Painting's history and claimed it was "clear and convincing" that the Painting was taken from Max Emden. *Id.*, at 9-10. In 2007, Plaintiffs presented (1) facts concerning the six known versions of Bellotto's "Marketplace at Pirna", (2) factual chronologies for the versions owned by Max Emden and Hugo Moser, and (3) facts about Moser's restitution claim and recovery of the Painting. *Id.*, at 140-47. Plaintiffs then declared: "The only logical conclusion is that the Emden painting was erroneously restituted to Moser [and] should be restituted [by the Museum] to the Emden heirs." *Id.* at 147.

Plaintiffs had *knowledge of facts giving rise to their claim* in 2006 and 2007, and they articulated the same claims for the Painting then that are alleged in the Complaint now. Plaintiffs argue that *additional* evidence received in 2021 further delayed (reset) accrual of their claims, but cite no legal support for this view, which would retroactively toll any claim if *additional* supporting evidence was later found.[7] In fact, Texas precedent is the opposite.

> It is not necessary that a party should know the details of the evidence by which to establish his cause of action; it is enough that he knows that a cause of action exists in his favor, and when he has this knowledge it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.

---

[7] *Gallier v. Woodbury Financial Services, Inc.*, 171 F. Supp. 3d 552 (S.D. Tex. 2016) and its line of cases are not helpful to Plaintiffs. Those cases involve claims *against* experts (e.g., accountants, lawyers) and hold that such claims may be tolled because the injury itself could be hard to discover. *Id.* at 566 (finding that "Texas law recognizes that it is 'unrealistic to expect a layman client' to identify fault in the advice of a purported expert, such as an attorney or an accountant") (quoting *Murphy v. Campbell*, 964 S.W. 2d 265, 270-71 (Tex. 1997)).

8

*Hoover v. Gregory*, 835 S.W.2d 668, 671-72 (Tex. App. 1992), *writ den.* (Nov. 4, 1992); *see also Vaught*, 107 F.3d at 1140; *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 754 (Tex. Ct. App. 1995, error denied).

### B.     The HEAR Act Does Not Salvage Plaintiffs' Stale Claims

Plaintiffs' "actual discovery" in 2006 and 2007 of facts and evidence supporting their claim to the Museum's Painting was sufficient to trigger the limitations period under the Holocaust Expropriated Art Recovery Act of 2016, Pub. L. No. 114-308, 130 Stat. 1524 (the "HEAR Act").[8]  Because Plaintiffs could have, but did not, assert their Texas state law claims following that discovery, their claims are excluded from the HEAR Act.  HEAR Act, Sec. 5(e); MTD at 13-15.  Plaintiffs ignore this exception, and focus instead on the general provision of the HEAR Act (which is not available here) to suggest that *all* time-barred restitution claims are revived by the HEAR Act's six-year limitations period.  The plain language of the HEAR Act proves otherwise and the two-year Texas limitations periods apply to Plaintiffs' causes of action.

Plaintiffs' reliance on Section 5(b) is misplaced.  That section applies only in cases where the HEAR Act's six-year limitation period has displaced the state's limitation period, which did not happen here.  Even where that section applies, it tolls the HEAR Act's limitations period *only* until the "claimant has sufficient knowledge that the particular version of the artworks [he has located] is the one that was taken."  S. Rep. No. 114-394, at 9-10 (2016).  The 2006 and 2007 Demand Letters confirm Plaintiffs had "sufficient knowledge" of their claim to the Museum's Painting; Plaintiffs claimed in 2006 the evidence of their claim was "clear and convincing."  Dkt.

---

[8]  The HEAR Act defines "actual discovery" as "knowledge" which means "having *actual knowledge of a fact or circumstance or sufficient information with regard to a relevant fact or circumstance* to amount to actual knowledge thereof."  HEAR Act, sec. 4 (emphasis added.)  Plaintiffs' 2006 and 2007 Demand Letters contain numerous facts, circumstances and information supporting their claim for the Painting.

9

13-1, at 10.  Section 5(b) does not salvage Plaintiffs' untimely claims.

### C. *Laches Bars the Plaintiffs' Claims*

Plaintiffs do not dispute that *laches* is available in restitution claims.  They argue instead there was no delay or prejudice.  To the contrary, the unreasonable delay and prejudice are self-evident.  Max Emden sold his painting (and two others) in 1938 in a documented sale.  Plaintiffs argue the 1938 sale was due to "economic duress." Compl. ¶ 66.  Yet Max Emden's son, Hans-Erich Emden, who inherited and managed his father's estate, made no claim for the Painting.  Dkt. 13-1, at 14.  Based on historical documentation located by the "world renowned researcher" Laurie Stein, and shared with Plaintiffs in 2007, Emden's 1938 sale of three paintings was voluntary.  The extant records show that Emden selected a dealer of his choice to approach the eventual buyer, Karl Haberstock, shipped the paintings from Switzerland to Germany to show him, then recalled the paintings from Germany to show to potential buyers in other countries, before shipping them back to Germany for sale to Haberstock at a mutually agreed price.  Dkt. 13-1 at 13-14, 16.  Here, the Museum is prejudiced because it cannot ask Hans-Erich about the circumstances of the 1938 sale or his failure to make any claim for the Painting.[9]  *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 195 (2d Cir. 2019); *Bakalar v. Vavra*, 819 F. Supp. 2d 293, 305 (S.D.N.Y. 2011), *aff'd*, 500 F. App'x 6 (2d Cir. 2012).  Hans-Erich's death also foreclosed any path to his knowledge of witnesses or documents that could provide further explanation of the specific facts and circumstances regarding the sale.  *Pearson v. Amer. Fid. & Cas. Co.,* 321 S.W.2d 620, 622 (Tex. Civ. App.-Amarillo 1959, *writ ref'd n.r.e.*).  Consequently, Plaintiffs' claims are barred by laches as their delay has caused the Museum prejudice.

---

[9] *See Zuckerman*, 928 F.3d at 196, n.11 (explaining that Congress "recognizes the importance of quieting title in property generally and the importance that claimants assert their rights in a timely fashion") (citation omitted).

10

Dated: February 11, 2022

By:   */s/Richard A. Schwartz*
Richard A. Schwartz
Elizabeth F. Eoff
MUNSCH HARDT KOPF & HARR,
P.C. 700 Milam Street, Suite 2700
Houston, Texas 77002-2806
dschwartz@munsch.com
eeoff@munsch.com

- and -

Thaddeus J. Stauber (*pro hac vice*) Aaron M. Brian (*pro hac vice*)
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: (213) 629-6000
tstauber@nixonpeabody.com
abrian@nixonpeabody.com

*Attorneys for Defendant*
*Museum of Fine Arts, Houston*

11

## CERTIFICATE OF SERVICE

I certify that on February 11, 2022, a true and correct copy of the foregoing Defendant's Reply in Support of Motion to Dismiss was served using the CM/ECF system which will send notification of such filing to all counsel of record who have registered as filing users of the system as follows:

William S. Richmond
brichmond@pcrfirm.com
Hillary Kramer Lynch
hlynch@pcrfirm.com
Nicholas C. Kliewer
nkliewer@pcrfirm.com
PLATT CHEEMA RICHMOND PLLC
1201 N. Riverfront Blvd., Suite 150
Dallas, Texas 75207
214.559.2700 Main
214.559.4390 Fax

*Attorneys for Plaintiffs*

/s/ Richard A. Schwartz
Richard A. Schwartz